### COUNTY OF GALVESTON v. GALVESTON WHARF COMPANY.
#### No. 2544.

1. **Illegal Assessment—Case Followed.**—The opinion in County of Galveston v. Galveston Gas Company followed, *ante* 509.

2. **Wharf Privileges.**—The assessment of "wharf privileges," it being a subject of taxation, by a tax assessor supplemental to the property rendered by the owner for taxation and received by the officers charged with the duty of assessment, is legal, it not having been actually rendered for assessment by the owner.

APPEAL from Galveston. Tried below before Hon. S. W. Jones, special district judge.

*W. M. Jerdone,* for appellant.

*Mott & Ballinger,* for appellee.

STAYTON, CHIEF JUSTICE.—This case involves all the questions involved in the case of County of Galveston v. Galveston Gas Company, *ante,* 509, and there are no facts in this case which on the questions in that case decided would call for different determination.

For the disposition of this case, therefore, we adopt what has been said in the other case on identical questions.

This case, however, differs from the other case in one particular. In the rendition of property made and received by the justices of the peace for the wharf company no assessment was made on "wharf privileges," though all its other property was assessed.

After McCormick entered upon the discharge of his duties as assessor he placed on his supplemental roll an assessment as follows: "Balance of capital other than real estate and other property, $728,420; wharf privileges, $78,900."

The court below held the assessment under the first item invalid, but held that the assessment on "wharf privileges" was valid, and to the amount of the taxes paid on that item refused to render a judgment in favor of appellee.

It is contended by appellee that having rendered its wharves and property appurtenant thereto to the justices this included its "wharf privi-

leges," and that these could not be assessed as something other and distinct from its tangible property used for wharf purposes.

The act specifying particular property which should be taxed enumerated things which would include all the tangible property, real and personal, owned by appellee, and in addition to this expressly required that "wharf privileges" as well as wharves should be taxed.    Gen. Laws 1874, p. 214.

This makes clear the legislative intention that "wharf privileges" should be taxed as something separate and distinct from the property real and personal, with which the business of a wharfinger might be conducted.

Whether the tax imposed by law on "wharf privileges" is in this case to be deemed a tax on appellee's corporate franchise or a tax in the nature of a tax on the occupation or business pursued by it is an immaterial question, for either would be legal, and no question can now be raised or is sought to be raised whether the valuation on appellee's "wharf privilege" fixed by the assessor was too high.

That not having been assessed by the justices it became the duty of the assessor to assess it when he came into office under the present Constitution, and if his valuation was too high the board of equalization would have had power to reduce it.    If the action of that board of July 10, 1877, can be treated as its action appellee had the right to invoke relief from over valuation.    It does not appear therefrom that the valuation placed by the assessor on "wharf privileges" was reduced; and if its action then had was not such as appellee could then invoke relief from over valuation, then no such relief was sought in any method prescribed by law and the valuation of the assessor would stand.

We find no error in the judgment of the court below except in that it refused to award interest to appellee, but for this its judgment will be reversed and judgment here rendered for appellee for thirty-six hundred and eighty-three dollars and seven cents, with interest thereon at the rate of eight per cent per annum from August 6, 1877, together with all costs incurred in the court below and in this court.

*Reversed and rendered.*

Opinion January 29, 1889.